UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVON POGOSIAN,<br><br>                    Petitioner,<br><br>          v.<br><br>ERNESTO SANTACRUZ, JR., et al.,<br><br>                    Respondents. | Case No. 5:26-cv-00540-SRM-E<br><br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

## I.    INTRODUCTION

Before the Court is Petitioner Levon Pogosian's ("Petitioner") request for a preliminary injunction. *See* Dkts. 12, 19. Respondents Ernesto Santacruz, Jr., Todd M. Lyons, Kristi Noem, and Pamela Bondi (collectively, "Respondents") oppose the issuance of a preliminary injunction. Dkt. 15. The Court has considered the parties' arguments, relevant legal authority, and record in this case. Petitioner's request for a preliminary injunction is **GRANTED**. The hearing set for April 29, 2026, is **VACATED**.

## II.    BACKGROUND

The following facts are derived from the declarations and exhibits attached to Petitioner's brief. *See* Dkt. 12. Petitioner was born in the Russian Federation in 1979. Dkt. 12-2 at 6. He entered the United States in November 2023 through the Calexico Port of

-1-

Entry after registering through the CBP One mobile application, *see* Dkt. 12-2 at 3, 6, and "was classified at the border as an 'arriving alien,'" *Id.* at 7; *see also id.* at 14 (Notice to Appear identifying Petitioner as "an arriving alien"). Immigration authorities placed Petitioner into removal proceedings and released him pending removal. *Id.* at 6. As a condition of his release, Petitioner was required to appear at all scheduled immigration hearings, to which he faithfully complied. *Id.* On the evening of October 1, 2025, Petitioner was at home with his wife and friend. *Id.* According to Petitioner, a plate broke accidentally that caused his wife to scream in fright. *Id.* One of his neighbors heard the commotion and called the police. *Id.* When the officers arrived at his home, they noted there were no signs of domestic violence but nevertheless detained Petitioner because he was intoxicated. *Id.* Petitioner attests that the Burbank City Attorney's Office declined to bring charges against him. *Id.* at 6–7. The following morning, Petitioner was released from police custody but was detained by Immigration and Customs Enforcement just outside the police station. *Id.* at 7. ICE did not give Petitioner written or oral notice that his release was being revoked, they did not provide him with a pre-deprivation hearing, and they have not provided him with a post-deprivation hearing since his detention. *Id.* On January 20, 2026, an immigration judge ordered Petitioner removed from the United States. *Id.* Petitioner filed an appeal three days later, which is currently pending. *Id.* As of today, Petitioner remains in immigration custody without any hearing regarding the revocation of his release or the legality of his continued detention. *Id.* at 8.

On February 6, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, claiming that the revocation of his release violates his substantive and procedural due process rights under the Fifth Amendment. *See* Dkt. 1 at 12–13. On February 27, 2026, Petitioner filed a second *ex parte* application for a temporary restraining order.[1] *See* Dkt. 12. Respondents

---

[1] Petitioner filed an initial *ex parte* application for temporary restraining order on February 6, 2026. Dkt. 2. The Court denied the application without prejudice because Petitioner did not offer sufficient evidence from which the Court could reasonably rely in evaluating the application. *See* Dkt. 10 at 6.

-2-

filed an opposition arguing the ex parte should be denied because Petitioner's counsel did not provide adequate notice of the upcoming application for temporary restraining order. Dkt. 15 at 9–11. In his reply, Petitioner conceded he did not comply with the notice requirements and asked the Court to issue an order to show cause why a preliminary injunction should not issue. Dkt. 16 at 4–6. On April 17, 2026, the Court denied Petitioner's second *ex parte* application for failure to comply with the notice requirements under Local Rule 7-19.2 and Federal Rule of Civil Procedure 65(b). *See* Dkt. 19 at 3–4. Seeing as the underlying issues were fully briefed, the Court set a hearing on the issue of preliminary injunction on April 29, 2026.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs preliminary injunctions. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). To obtain a preliminary injunction, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a preliminary injunction is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a preliminary injunction under the Ninth Circuit's sliding-scale approach. *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant must show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, (4) and the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot

-3-

be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation.”’” *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). “They ‘need not promise a certainty of success, nor even present a probability of success, but must involve a “fair chance of success on the merits.”’” *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still “make a showing on all four prongs.” *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) (“A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief.”), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (“The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.”); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) (“A verified complaint or supporting affidavits may afford the basis for a preliminary injunction.”). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a preliminary injunction. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court’s order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) (“A motion for preliminary injunction must be supported by ‘[e]vidence that goes beyond the unverified allegations of the pleadings.’”) (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## IV.    DISCUSSION

Petitioner asserts that he is entitled to preliminary injunctive relief because Respondents violated his substantive and procedural due process rights under the Fifth Amendment. *See* Dkt. 1 at 7–15. The Court need not address whether Petitioner is entitled to preliminary injunctive relief on his substantive due process claim because he is entitled to the full scope of the requested relief on his claim that Respondents violated his procedural due process rights.

### A.    Likelihood of Success on the Merits

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These protections extend to all persons physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This includes noncitizens whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections, "though the nature of that protection may vary depending upon status and circumstance." *Id.*; *see also A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas*, 533 U.S. at 693 (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."). A two-step analysis is employed to analyze a procedural due process claim. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, a court must determine whether the plaintiff "was deprived of a constitutionally protected liberty or property interest." *Id.* Second, if a protected interest exists, a court then weighs three factors to determine "whether that deprivation was accompanied by sufficient procedural protections." *Id.* The three factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These are known as the *Mathews* factors.

### 1.    Deprivation of constitutionally protected liberty interest

To determine whether Petitioner was afforded due process when Respondents re-detained him, the Court must first determine if Petitioner was deprived of a constitutionally protected liberty interest. *Johnson*, 55 F.4th at 1179.

Certain noncitizens applying for admission into the United States are generally subject to mandatory detention under either 8 U.S.C. § 1225(b)(1) or 1225(b)(2). A noncitizen may nevertheless be temporarily released on parole "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), so long as the noncitizen is "neither a security risk nor a risk of absconding," 8 C.F.R § 212.5(b). *See also Kharb v. U.S. Dep't of Homeland Sec.*, No. 5:26-cv-00656, 2026 WL 485765, at *2 (C.D. Cal. Feb. 17, 2026) ("Release under [8 U.S.C. § 1182(d)(5)(A)] therefore 'reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'") (quoting *Fernández López v. Wofford*, No. 1:25-cv-01226, 2025 WL 2959319, at *2 (E.D.

Cal. Oct. 17, 2025)). The decision to release a noncitizen from custody reflects an implicit promise from the government to the noncitizen that "'parole will be revoked only if he fails to live up to the parole conditions.'" *Dieng v. Hermosillo*, No. 2:26-cv-00190, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also id.* ("This Court reiterates that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.").

Here, Petitioner obtained a protected liberty interest when immigration authorities released him from immigration custody. Although he was subject to mandatory detention under 8 U.S.C. § 1225(b), immigration authorities decided that Petitioner was eligible for parole for either urgent humanitarian reasons or significant public benefit and that he did not pose a security risk or a risk of absconding. In releasing him, CBP implicitly promised to Petitioner that his parole would not be revoked so long as he lived up to the conditions of his parole. Petitioner thus gained a protected liberty interest in remaining out of custody when he was released on parole, the deprivation of which must be accompanied by sufficient procedural protections. *See also Torres v. Hermosillo*, 2:25-cv-02687, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) ("This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in Morrissey.") (collecting cases); *G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–10 (E.D. Cal. 2025) (finding petitioner "ha[d] a protected liberty interest in his release"); *Singh v. Albarran*, No. 1:26-cv-00724, 2026 WL 477996, at *2 (E.D. Cal. Feb. 19, 2026) (finding petitioner who was subject to mandatory detention under Section 1225(b)(2) had liberty interest in remaining out of custody after released on humanitarian parole under Section 1182(d)(5)(A)).

### 2. The *Mathews* factors

Having determined that Petitioner has a protected liberty interest in remaining out of custody, the Court now weighs the three *Mathews* factors to determine whether Petitioner's re-detention was accompanied by sufficient procedural protections. Based on

this record, the *Mathews* factors weigh in favor of concluding that Respondents did not provide Petitioner with adequate procedural protections when they re-detained him.

First, Petitioner had a significant liberty interest that was affected by Respondents' actions. When immigration authorities released Petitioner on parole, they had determined that he did not pose a security risk or a risk of absconding. In releasing Petitioner, the immigration authorities also implicitly promised Petitioner that he could remain at liberty and will not be re-detained unless he failed to comply with the conditions of his release. Petitioner thus had a weighty interest in remaining free from custody that was affected by his re-detention.

Second, there was significant risk that Petitioner would be erroneously deprived of his liberty through the procedures Respondents used here: namely, no notice, no pre-deprivation hearing, and no prompt post-deprivation hearing. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2578207, at *3 (N.D. Cal. Sep. 5, 2025) (quoting *Zadvydas*, 533 U.S. at 690). Due process usually requires that the government provide a noncitizen with notice and a hearing before depriving him of his liberty. *See Zinermon*, 494 U.S. at 127. These pre-deprivation procedures are pivotal in protecting against the erroneous deprivation of one's liberty because they apprise the noncitizen of the reasons for their potential re-detention and provides them an opportunity to demonstrate why such action may be unwarranted. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) ("Given the absence of any evidence justifying petitioners' detention, there is a significant risk that the deprivation of their liberty in the time between their arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified. Providing them with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. Sep. 12, 20125) (concluding second *Mathews* factor weighed in noncitizen's favor where pre-deprivation

hearing would have allowed petitioner to explain why his inability to comply with a condition of release did not justify re-detention). Of course, a prompt post-deprivation hearing may suffice in special cases "when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted." *Shinault*, 782 F.3d at 1058. But the evidence in this record shows that ICE re-detained Petitioner without notice, a pre-deprivation hearing, or a prompt post-deprivation hearing. Even assuming ICE was justified in re-detaining Petitioner because police officers briefly detained him on October 1, due process still required ICE to notify Petitioner of the reasons for his re-detention and an opportunity to contest why his re-detention was not justified.

Finally, while the government has a strong interest in ensuring that noncitizens do not pose a danger and will attend their immigration proceedings, the government's interest in re-detaining a noncitizen without notice or a pre-deprivation hearing imposes minimal financial or administrative burdens as compared to the cost of detaining a noncitizen pending a bond hearing, or removal, where it is unwarranted. *See Pablo Sequen*, 806 F. Supp. 3d at 1090 (explaining that the government has minimal interest in re-detaining a noncitizen who does not pose danger or a flight risk because custody hearings are routine and it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing); *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (similar); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025) (similar).

Having weighed the three *Mathews* factors, the Court concludes that Petitioner's deprivation of his liberty interest was not accompanied by sufficient procedural protections. He has thus made a clear showing that he is likely to succeed on his Fifth Amendment procedural due process claim. In turn, this *Winter* factor weighs in favor of granting preliminary injunctive relief.

-9-

## B.      Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Petitioner has made a clear showing that Respondents likely deprived him of his procedural due process rights when they re-detained him without notice or a pre-deprivation hearing. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi*, 792 F. Supp. 3d at 1037 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata*, 2025 WL 3578207, at *3 ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this factor weighs in favor of granting Petitioner temporary injunctive relief.

## C.      Balance of Equities and Public Interest

In addition, Petitioner and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). Petitioner also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not afford Petitioner with adequate procedural safeguards before his re-detention. Respondents, by contrast, will suffer minimal injury with a short delay in detaining Petitioner. "Faced with a conflict between minimally costly procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in Petitioner['s] favor." *Valencia Zapata*, 2025 WL 2578207, at *4.

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

-10-

## D. Bond

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*."'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

//
//
//

## V.   CONCLUSION

For the above reasons, the second *ex parte* application is **GRANTED** as follows:

1.   Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody. Respondents must file a declaration by April 30, 2026, confirming Petitioner has been released from immigration custody. Respondents are further **ORDERED** to place Petitioner on the same conditions of parole before his re-detention, if any existed before the re-detention, and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.

2.   Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are temporarily **ENJOINED** from re-detaining Petitioner without notice of the reasons for why they intend to re-detain him and without a pre-deprivation hearing before a neutral decisionmaker, unless special circumstances exist that justify immediate re-detention and a post-deprivation hearing.

**IT IS SO ORDERED.**

Dated: April 28, 2026

_____
HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE

-12-